UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTATE OF JERRY MALLOY,
DECEASED, AND LUCIA MALLOY-
RANGEL,

      Plaintiffs,

v.

PNC BANK, ET AL.,

      Defendants.
_____/

Case No. 11-12922

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT U.S. BANK, N.A.'S MOTION TO DISMISS [25]**

Plaintiffs' suit arises out of foreclosure proceedings on residential property located at 811 Barton, Ann Arbor, Michigan (the "Ann Arbor property"). It alleges state-law claims against Defendants PNC Bank, U.S. Bank, N.A., as Trustee for Specialty Underwriting and Residential Finance Trust Mortgage Loan Asset-Backed Certificates Series 2006-BC1 ("U.S. Bank"), and Trott & Trott, P.C. Defendant Trott & Trott has already been dismissed from this action.

This mortgage-related dispute comes before the Court on Defendant U.S. Bank's motion to dismiss the claims in Plaintiffs' First Amended Complaint. Plaintiffs' amended complaint alleges that Defendant U.S. Bank (1) violated Michigan's foreclosure by advertisement statute, Mich. Comp. Laws § 600.3204, because it was attempting to foreclose on a mortgage without ownership of the indebtedness or an interest in the indebtedness (Count I), there was a break in the record chain of title (Count II), and there

was an invalid assignment of the mortgage by Defendant PNC to Defendant U.S. Bank (Count III); (2) lacks standing to assign, foreclose on, or take any action to enforce the mortgage on the Ann Arbor property (Counts IV and V); and (3) breached the terms of the underlying mortgage agreement (Count VI). Plaintiffs also seek to quiet title in the Ann Arbor property (Count VIII),[1] and to have the Court take physical custody of the mortgage note while this litigation is pending (Count IX).

For the reasons stated below, this Court GRANTS Defendant U.S. Bank's motion to dismiss.

**I.     Facts**

   **A.  Quit Claim Deed**

On March 23, 2005, Jerry and Guadalupe Malloy quit claimed the Ann Arbor property to "Jerry Malloy a married man, Guadalup Malloy and Lucia Malloy Rangel with full rights of survivorship." (Def.'s Mot., Ex. E.) That Quit Claim Deed was not recorded until January 30, 2007; after Jerry Malloy had executed a Mortgage and Note on the Ann Arbor property. (Def.'s Mot., Ex. E.)

   **B.  Mortgage Loan**

On September 8, 2005, Jerry Malloy executed a Note promising to repay Commonwealth United Mortgage ("Commonwealth"), a division of National City Bank of Indiana, the $180,000 it had loaned to Malloy. (Am. Compl., Ex. 8; Def.'s Mot., Ex. A.) The Note was secured by a Mortgage on property located at 811 Barton, Ann Arbor, Michigan. That mortgage was recorded on September 26, 2005. (*Id.*)

---

[1] Count VII is not asserted against Defendant U.S. Bank. (Am. Compl., Count VII.)

On or about March 7, 2007, Commonwealth assigned the Mortgage and Note to National City Mortgage Company ("National City"), a subsidiary of National City Bank. That Assignment was recorded on March 23, 2007. (Am. Compl., Ex. 15; Def.'s Mot. Ex. C.)

On or about September 29, 2010, Defendant PNC, as successor by merger to National City, assigned the Mortgage and Note to Defendant U.S. Bank.[2] That Assignment was recorded on October 19, 2010. (Am. Compl., Ex. 5; Def.'s Mot., Ex. D.)

### C. Mortgagor Jerry Malloy's Death

The mortgagor-debtor, Jerry Malloy, died on October 3, 2009. Plaintiffs allege that a copy of Malloy's death certificate was filed with the Washtenaw County Clerk/Register on October 13, 2009. (Am. Compl., Ex. 10.) That death certificate, however, does not provide a Liber or Page number confirming that it was recorded in the Washtenaw County Register of Deeds.[3] (Am. Compl., Ex. 10.) Plaintiffs allege that Lucia Malloy-Rangel became sole owner of the Ann Arbor property by right of survivorship. (Am. Compl. ¶ 11.)

On April 29, 2010, Plaintiff Malloy-Rangel was appointed Personal Representative of her father's estate. (*Id.* at ¶ 12; Am. Compl., Ex. 11, Letters of Authority.) On April 25, 2011, the Estate of Jerry L. Malloy was closed. (Am. Compl. at ¶ 26 and Ex. 14, Probate Closing Statement.)

### D. Foreclosure Proceedings

---

[2] Defendant U.S. Bank is the Trustee of a mortgage pass-through trust ("U.S. Bank Trust"). The U.S. Bank Trust was governed by a Pooling and Servicing Agreement, which, among other things, served to control allocation of loan proceeds and losses to bondholders, described how subject loans were to be serviced, and, according to Plaintiffs, established a "closing date" deadline for the assignment of assets to the Trust.

[3] It is undisputed that Guadalupe Malloy died before Jerry Malloy, as reflected in the recorded Mortgage and Note.

After default on the mortgage loan, foreclosure proceedings began. (*Id.* at ¶ 21.)

On August 6, 2010, counsel for BAC Home Loans Servicing, L.P ("BAC"), Trott & Trott, sent a notice addressed to Jerry Malloy at 811 Barton Drive, Ann Arbor, Michigan, by first class, certified mail, restricted delivery with return receipt requested. The notice informed the "Borrower/Mortgagor" that the mortgage loan on the Ann Arbor property was in default, that $179,315.39 was due and owing, and advised mortgagor what he needed to do to avoid foreclosure. (Def.'s Mot., Ex. G.)

On August 12, 2010, BAC's counsel, Trott & Trott, published notice pursuant to Mich. Comp. Laws § 700. 3205a(4), to "JERRY MALLOY, the borrowers and/or mortgagors (hereinafter 'Borrower') regarding the property located at: 811 Barton Dr., Ann Arbor, MI 48105-1229" in the Washtenaw Legal News. That published notice provided Borrower with the same information contained in the August 6, 2010 letter regarding how to avoid foreclosure. (Def.'s Mot., Ex. J.)

On August 17, 2010, BAC's counsel sent a letter to Jerry Malloy at the Ann Arbor property address, confirming that either Jerry Malloy, "a co-mortgagor, or an approved housing counselor" had requested a meeting to discuss loan modification and/or loss mitigation options regarding the Ann Arbor property, confirming that "the foreclosure process will not continue until on or after November 4, 2010," and requested specific documents. (Am. Compl., Ex. 13; Def.'s Mot., Ex. H.)

On September 16, 2010, BAC's counsel sent another letter addressed to Jerry Malloy at the Ann Arbor property address. It informed the "Borrower(s)" that counsel had not yet received the requested documents and if documentation was not submitted "we may proceed with foreclosure on or after November 4, 2010." (Def.'s Mot., Ex. I.)

On May 19, 2011, counsel for the mortgage loan servicer published a Notice of Mortgage Foreclosure Sale of the Ann Arbor property. (Def.'s Mot., Ex. K; Am. Compl., Ex. 1.)

On or before July 1, 2011, BAC sent a written notice to Jerry Malloy at the Ann Arbor property address advising him that, effective July 1, 2011, the servicing of his mortgage loan was being transferred from BAC Home Loans Servicing, L.P. to Bank of America, N.A. (Am. Compl., Ex. 2.)

To date, the foreclosure sale has not occurred; rather, the sale is being adjourned week to week. (Def.'s Mot. at 3.)

### E. Plaintiffs' Lawsuit

On July 6, 2011, Defendant Trott & Trott timely removed Plaintiffs' lawsuit from the Washtenaw County Circuit Court because Plaintiffs had alleged a federal claim against that Defendant [1]. Plaintiffs subsequently filed an amended complaint, dismissing the sole federal claim [13]. This Court subsequently denied Plaintiffs' motion to remand, concluding that Defendant Trott & Trott had been fraudulently joined [20] and granted Trott & Trott's motion to dismiss [39]. The matter is now before the Court on Defendant U.S. Bank's motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. Motion to Dismiss Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the

complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

Moreover, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). "A court may also consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Id.* at 336. In addition, documents not attached to the pleadings may still be considered part of the pleadings when the "document is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (internal quotation marks and citations omitted).

### III. Analysis

Although Plaintiffs' amended complaint asserts numerous causes of action, those alleged against Defendant U.S. Bank challenge its standing and/or authority to foreclose, including the validity of various assignments of the Malloy Mortgage and Note, because (1) the assignments improperly transferred the Mortgage but not the Note and this caused a break in the record chain of title, (2) the absence of an assignment from National City to PNC caused a break in the record chain of title, and (3) an untimely transfer of the Mortgage to the U.S. Bank Trust at issue breached certain terms of a Pooling and Servicing Agreement ("PSA") and thus rendered U.S. Bank's assignment null and void. Plaintiffs also allege that Defendant U.S. Bank violated Michigan's foreclosure by advertisement statute, Mich. Comp. Laws § 600.3204, including its loan modification notice provisions, Mich.

Comp. Laws § 600.3205a.[4] Plaintiffs' amended complaint seeks, among other forms of relief, an order providing for "rescission of the proposed foreclosure" on the Ann Arbor property, a declaration that Defendants "have no estate or interest whatsoever, in or to" the Ann Arbor property, and an injunction precluding further assignments of the Malloy Mortgage/Note or eviction or collection proceedings against Plaintiffs. Plaintiffs also seek monetary damages, attorney fees and costs from Defendants for "wrongful foreclosure." (Am. Compl. at 22-23.)

### A. Plaintiffs' Claims Challenging Standing, Holder-in-due-course Status, Authority to Foreclose Fail

Plaintiffs assert that missing, defective, or flawed assignments have corrupted the record chain of title and thus preclude Defendant U.S. Bank's standing to foreclose under Michigan's foreclosure by advertisement statute. The Michigan Supreme Court, the Sixth Circuit and this Court have previously rejected similar arguments. *See Residential Funding Co., L.L.C. v. Saurman*, 805 N.W.2d 183, 184 (Mich. 2011) (quoting *Arnold v. DMR Fin.*, 532 N.W.2d 852, 856 (Mich. 1995), and observing that "'the validity of the foreclosure is not affected by any unrecorded assignment of interest held for security.'"); *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, No. 10-1782, 399 F. App'x 97, 102 (6th Cir. 2010) (rejecting arguments that a defective or flawed assignment corrupts the chain of title because, among other reasons, "a litigant who is not a party to an assignment lacks standing to challenge that assignment.")(internal quotation marks and citations omitted), *cert. denied*, 131 S. Ct. 1696 (2011); *Jarbo v. BAC Home Loan Serv.*,

---

[4] Plaintiffs do not allege a violation of § 600.3205a in a separate count; rather, it is alleged in the "General Allegations" of their amended complaint. (Am. Compl. at ¶¶ 21-25.)

No. 10-12632, 2010 WL 5173825, *8 (E.D. Mich. Dec. 15, 2010) (same). Plaintiffs' reliance on a recent decision from the Michigan Court of Appeals addressing Michigan's foreclosure by advertisement statute is misplaced. In *Kim v. JP Morgan Chase Bank*, ___ N.W.2d ___, 2012 WL 104463 (Mich. Ct. App. Jan. 12, 2012), the Michigan Court of Appeals reasoned that, because the defendant bank was the party seeking to foreclose by advertisement and had acquired its interest in the mortgage by assignment, Michigan's statute required that defendant bank record its mortgage interest, i.e., assignment of mortgage, before the date of the sheriff's sale. Here, there has been no sheriff's sale, and Defendant U.S. Bank has already recorded PNC's assignment of the Malloy Mortgage/Note to it. Thus, the holding in *Kim* does nothing to advance Plaintiffs' claims.

This Court rejects the arguments that form the basis of Plaintiffs' claims against U.S. Bank for the following reasons. First, Plaintiffs, who are not parties to the challenged assignments, lack standing to bring claims that question their validity. *See Livonia Props. Holdings*, 399 F. App'x at 102 (observing that "there is ample authority to support the proposition that a litigant who is not a party to an assignment lacks standing to challenge that assignment.") (internal quotation marks and citation omitted).

Even if they did have standing to challenge U.S. Bank's assignment generally, Plaintiffs, who are neither parties to nor intended third-party beneficiaries of the U.S. Bank Trust's Pooling and Servicing Agreement, lack standing to challenge U.S. Bank's compliance with that Agreement. *See Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 717 F. Supp. 2d 724, 747-48 (E.D. Mich.) (observing that the plaintiff/borrower lacked standing to challenge the defendant bank's compliance with a pooling and servicing agreement because it was not a party to or a third party beneficiary

9

of that agreement and further observing that any breach in an underlying pooling and servicing agreement "would not render the assignments themselves (which are separate contracts) void."), *aff'd*, 399 F. App'x 97 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 1696 (2011). *See also Anderson v. Countrywide Home Loans*, No. 10-2685, 2011 WL 1627945, at *4 (D. Minn.) (rejecting an argument that the an assignment of a mortgage was invalid because it violated the terms of a PSA and observing that "Plaintiffs do not have standing to challenge the validity of the assignment to the Trust because they are not parties to the PSA."), *R. & R. adopted*, 2011 WL 1630113 (D. Minn. Apr. 28, 2011); *Wittenberg v. First Indep. Mortg. Co.*, No. 3:10-CV-58, 2011 WL 1357483, at **21-22 (N.D. W. Va. Apr. 11, 2011) (rejecting argument similar to Plaintiffs' because the plaintiff/borrower there was neither a party to the subject PSA or an intended beneficiary). To the extent the unpublished Washtenaw County Circuit Court decision, *Henricks v. US Bank National Association as Successor Trustee to Bank of America*, Case No. 10-849-CH (Washtenaw County Circuit Court, State of Michigan, June 7, 2011), concludes otherwise, it is rejected by this Court as unpersuasive.

As to Plaintiffs' claim that National City failed to assign the Malloy Mortgage to PNC, the Michigan Supreme Court recently reaffirmed its earlier holding that "'the validity of the foreclosure is not affected by any unrecorded assignment of interest held for security.'" *Residential Funding Co.,* 805 N.W.2d at 184 (quoting *Arnold v. DMR Fin.*, 532 N.W.2d at 856). In any event, when PNC became successor by merger to National City, PNC obtained the Mortgage and Note by operation of law and thus there was no need for an

assignment. *See Winiemko v. GE Capital Mortg. Serv., Inc.*, No. 177827, 1997 WL 33354482, at *2 (Mich. Ct. App. Jan. 17, 1997).[5]

Despite Plaintiffs' claims to the contrary, there is no defect in the record chain of title that precludes Defendant U.S. Bank from pursuing foreclosure by advertisement under Michigan law. Section 600.3204(3) of Michigan's foreclosure by advertisement statute provides that: "[i]f the party foreclosing a mortgage by advertising is not the original mortgagee, a record chain of title shall exist prior to the date of sale . . . evidencing the assignment of the mortgage to the party foreclosing the mortgage." Mich. Comp. Laws § 600.3204(3). To comply, the Sixth Circuit recently observed, requires a record showing "a clear chain of title from the original mortgagee to [the party foreclosing on the mortgage]." *Livonia Props. Holdings*, 399 F. App'x at 101. Here, as in *Livonia Props. Holdings*, there is such a record. The recorded Mortgage and assignments establish the required chain of title from the original mortgagee to Defendant U.S. Bank. (Def.'s Mot., Exs. B, C. and D.)

Plaintiffs' claim in Count III -- that there is a defect in the record chain of title that precludes foreclosure because the Mortgage and Note were improperly "split" or separately assigned -- is rejected. First, the challenged assignments expressly transferred the Note along with the Mortgage. Defendant U.S. Bank is both the mortgagee and the noteholder. (Def.'s Mot., Exs. C and D.) Second, the Michigan Court of Appeals decision upon which Plaintiffs base their claim was recently reversed by the Michigan Supreme Court. *See Residential Funding Co., LLC v. Saurman*, ___ N.W.2d ___, 292 Mich. App. 321, 2011 WL

---

[5]U.S. Bank's assignment expressly identifies PNC as "SBM" or successor by merger of National City Mortgage Co., a subsidiary of National City Bank

11

1516819 (Mich. Ct. App.), *rev'd*, 805 N.W.2d 909 (Mich. 2011). The Michigan Court of Appeals' decision addressed the issue "whether MERS, as a mortgagee, but not a noteholder, could exercise its contractual right to foreclose by means of advertisement," and concluded that it could not because "the notes and the mortgages are separate documents, providing evidence of separate obligations and interests," and "MERS's interest in the mortgages did not give it an interest in the debts" and thus MERS could not be considered "'the owner . . . of an interest in the indebtedness secured by the mortgage . . . .'" 2011 WL 1516819 at **3, 4 (quoting Mich. Comp. Laws § 600.3204(1)(d)). The court also concluded that contractual language could not "grant MERS the authority to take action" prohibited by § 600.3204(1)(d). *Id.* at 5.

On appeal, the Michigan Supreme Court agreed with the dissenting judge in the Michigan Court of Appeals that MERS was "'the owner . . . of an interest indebtedness secured by the mortgage . . . . because [MERS'] contractual obligations as mortgagee were dependent upon whether the mortgagor met the obligation to pay the indebtedness which the mortgage secured." *Residential Funding*, 805 N.W. 2d at 909 (internal quotation marks and citation omitted). The Michigan Supreme Court clarified that there is a difference between " an 'owner of an interest in the indebtedness'" and "an ownership interest in the note" and that "MERS' status as an 'owner of an interest in the indebtedness' does not equate to an ownership interest in the note." *Id.* It explained:

> [A]s record-holder of the mortgage, MERS owned a security lien on the [mortgaged] properties, the continued existence of which was contingent upon the satisfaction of the indebtedness. This interest in the indebtedness -- i.e., the ownership of legal title to a security lien whose existence is wholly contingent on the satisfaction of the indebtedness -- authorized MERS to foreclose by advertisement under MCL 600.3204(1)(d).

12

*Id.* at 909. It added that the Court of Appeals' majority decision was "inconsistent with established legal principles governing Michigan's real property law, and specifically foreclosure by advertisement." *Id.* Quoting well-settled Michigan law, the Michigan Supreme Court observed that "the mortgage and note are to be construed together," that "the mortgagee has a lien on the land to secure the debt," that "[i]t has never been necessary that the mortgage should be given directly to the beneficiaries," that "[t]he security is always made in trust to secure obligations, and the trust and the beneficial interest need not be in the same hands," and "[o]nly the record holder of the mortgage has the power to foreclose; the validity of the foreclosure is not affected by any unrecorded assignment of interest held for security." *Id.* (internal quotation marks and citations omitted).

The Michigan Supreme Court concluded that the Michigan Court of Appeals had erroneously construed § 600.3204(1)(d) when it determined that "an undisputed record holder of a mortgage, such as MERS, no longer possesses the statutory authority to foreclose." *Id.* Rather, the proper construction is as follows:

> [T]he Legislature's use of the phrase "interest in the indebtedness" to denote a category of parties entitled to foreclose by advertisement indicates the intent to include mortgagees of record among the parties entitled to foreclose by advertisement, along with parties who "own[ ] the indebtedness" and parties who act as "the servicing agent of the mortgage."

*Id.* (quoting Mich. Comp. Laws § 600.3204(1)(d)).

Here, Defendant U.S. Bank is an undisputed record holder of the Malloy Mortgage. Not only is U.S. Bank the mortgagee on the Mortgage, it holds the Note. Thus, it's standing

13

to foreclose under § 600.3204(1)(d) is established as a matter of law. Plaintiffs' claims to the contrary are dismissed with prejudice.[6]

### B. Plaintiffs' Allegations of Improper Notice Fail to State a Claim

Plaintiffs' claims that foreclosure proceedings were initiated without providing required notices under Mich. Comp. Laws § 600.3205a are also rejected. Despite Plaintiffs' complaint that the notice was to Jerry Malloy rather than his estate, the exhibits attached to Plaintiffs' amended complaint reveal that the challenged notices complied with the language of § 600.3205a(4). (Am. Compl., Exs. 1, 12, 13.) Moreover, Plaintiffs' reliance on a loan modification meeting notice issued under Mich. Comp. Laws § 600.3205a(4) does nothing to establish Plaintiffs' claim that Defendant U.S. Bank wrongfully initiated foreclosure proceedings. The plain language of § 600.3205a provides that it is a *prerequisite* to foreclosure. It does not trigger the commencement of foreclosure proceedings. Finally, Plaintiffs cannot claim that they lacked actual notice of the August 2010 loan modification meeting notice as their amended complaint references and attaches

---

[6]This Court also rejects arguments Plaintiffs raise in their Response that BAC or Defendant U.S. Bank's current servicing agent lack authority to foreclose under § 600.3204(1)(d). The plain language of that statute provides otherwise.

The Court also rejects Plaintiffs' arguments in their Response that, because the servicing agent of the mortgage -- BAC -- initiated foreclosure proceedings, Plaintiffs are or will be subjected to a double foreclosure. The documents Plaintiffs attach to and reference in their amended complaint and the Michigan Supreme Court's recent decision in *Residential Funding* preclude any such argument.

Finally, Plaintiffs' newly asserted U.C.C./breach of contract claims (based on the same allegations/documents/arguments that transfer/assignment of Malloy Mortgage/Note was improper and invalid) are also rejected as implausible for all the reasons stated above. Plaintiffs have not and cannot state a cognizable U.C.C. claim, or breach of contract claim based on any such U.C.C. violation. Their attempt to do so is rejected under *Twombly* and *Iqbal*.

an August 17, 2010 letter from foreclosure counsel, Trott & Trott, addressed to Jerry Malloy and delivered to the Ann Arbor property that discusses loan modification issues. (Am. Compl. at ¶¶ 25, 52, Ex. 13.)

### C. Plaintiffs' Fail to State a Breach of Contract Claim

Plaintiffs' breach of contract claims allege that Defendant U.S. Bank breached the Malloy Mortgage and Note by making unauthorized assignments -- mortgage/note splitting and violation of the PSA -- and by thus beginning foreclosure proceedings without proper authority. These breach of contract claims fail under *Twombly* and *Iqbal*. Because Plaintiffs' breach of contract claims consist of nothing more than a restatement of the other claims discussed above and dismissed, they too are dismissed with prejudice.

### D. Plaintiffs' Fail to State a Quiet Title Claim

Plaintiffs' quiet title claims also fail. Under Michigan law, the plaintiff has the burden of proof in an action to quiet title and must make out a prima facie case of title. *Stinebaugh v. Bristol*, 347 N.W.2d 219, 221 (Mich. Ct. App. 1984). Plaintiffs here fail to provide any legal or factual justification for their quiet title claim. Rather, this claim is founded on the same factual allegations and legal arguments addressed above -- that Defendant U.S. Bank lacks standing and/or authority to foreclose under Michigan's foreclosure by

advertisement statute.[7]  Accordingly, Plaintiffs' quiet title claims also fail under *Twombly* and *Iqbal*.

### E.  Plaintiffs' Cause of Action for Claim and Delivery Fails

In Count IX of Plaintiffs' amended complaint, they allege that the Malloy Mortgage Note is Plaintiffs' "private property" and "should be returned to it as necessary to prevent fraudulent negotiation of the note[.]"  (Am. Compl., ¶ 101.)  Under Michigan law, a civil action for claim and delivery "may be brought to recover possession of any goods or chattels which have been unlawfully taken or unlawfully detained and to recover damages sustained by the taking or unlawful detention."  Mich. Comp. Laws § 600.2920(1).  However, "an action may not be maintained under this section by a person who, at the time the action is commenced, does not have a right to possession of the goods or chattels taken or detained." Mich. Comp. Laws § 600.2920(1)(c).  For all the reasons stated above, Plaintiffs cannot state a cause of action for claim and delivery based on allegations that Defendant U.S. Bank unlawfully took or detained the Mortgage Note at issue here.  Accordingly, Plaintiffs' cause of action for claim and delivery is dismissed as implausible under *Twombly* and *Iqbal*.

### IV.  Conclusion

---

[7]Plaintiffs' claims for relief based on allegations that, because Defendant U.S. Bank has "unclean hands," it should be estopped from foreclosure also fail.  First, the allegations are merely conclusory and thus fail to state a claim for relief.  Second, the equitable doctrine of "unclean hands" is invoked by a party as a defense to a claim raised by the opposing party or by the court; it is not a cause of action.  *See Stachnik v. Winkel*, 230 N.W.2d 529, 532 (1975) (observing that the equitable doctrine of unclean hands "is rooted in the historical concept of the court of equity as a vehicle for affirmatively enforcing the requirement of conscience and good faith.  This presupposes a refusal on [the court's] part to be the 'abettor of inequity.").

For the above-stated reasons, Defendant U.S. Bank's motion to dismiss is GRANTED, and Plaintiffs' claims against this Defendant are DISMISSED WITH PREJUDICE.[8]

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: January 23, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 23, 2012, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

---

[8] The only remaining Defendant is PNC Bank.