UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTATE OF JERRY MALLOY, ET AL,

    Plaintiffs,

v.

PNC BANK, ET AL,

    Defendants.
    _____/

Case No. 11-12922

Honorable Nancy G. Edmunds

**OPINION AND ORDER (1) DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [44]; GRANTING DEFENDANT PNC BANK'S RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS [56]; AND (3) CANCELLING HEARING ON MOTIONS SCHEDULED FOR APRIL 11, 2012**

Plaintiffs' suit arises out of foreclosure proceedings on residential property located at 811 Barton, Ann Arbor, Michigan (the "Ann Arbor property"). It alleges state-law claims against Defendants PNC Bank, U.S. Bank, N.A., as Trustee for Specialty Underwriting and Residential Finance Trust Mortgage Loan Asset-Backed Certificates Series 2006-BCl ("U.S. Bank"), and Trott & Trott, P.C. Defendants Trott & Trott and U.S. Bank have already been dismissed from this action. The sole remaining Defendant in this action is PNC Bank.

This matter comes before the Court on Plaintiffs' motion for summary judgment and Defendant PNC Bank's motion for judgment on the pleadings, brought pursuant to Federal Rule of Civil Procedure 12(c). The Court finds that the facts and legal arguments are adequately presented in the parties' pleadings and that the decision process would not be significantly aided by oral argument. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), it is hereby ORDERED that Plaintiffs' motion for summary judgment

[44] and Defendant PNC Bank's motion for judgment on the pleadings [56] be resolved as submitted, and the hearing previously scheduled for these motions on April 11, 2012 is hereby CANCELLED.

For the reasons stated below, Plaintiffs' motion for summary judgment [44] is DENIED, and Defendant PNC Bank's motion for judgment on the pleadings [56] is GRANTED.

**I.     Facts**

  **A. Quit Claim Deed**

On March 23, 2005, Jerry and Guadalupe Malloy quit claimed the Ann Arbor property to "Jerry Malloy a married man, Guadalup Malloy and Lucia Malloy Rangel with full rights of survivorship." (Doc. # 25, Def. U.S. Bank's Mot. to Dismiss, Ex. E.)  That Quit Claim Deed was not recorded until January 30, 2007; after Jerry Malloy had executed a Mortgage and Note on the Ann Arbor property. (*Id.*)

  **B. Mortgage Loan**

On September 8, 2005, Jerry Malloy executed a Note promising to repay Commonwealth United Mortgage ("Commonwealth"), a division of National City Bank of Indiana, the $180,000 it had loaned to Malloy. (1st Am. Compl., Ex. 8.)  The Note was secured by a Mortgage on property located at 811 Barton, Ann Arbor, Michigan. That mortgage was recorded on September 26, 2005. (*Id.*)

On or about March 7, 2007, Commonwealth assigned the Mortgage and Note to National City Mortgage Company, a subsidiary of National City Bank.  That Assignment was recorded on March 23, 2007. (1st Am. Compl., Ex. 15.)  Effective October 1, 2008, as part of a corporate consolidation, National City Mortgage Co. merged into National City

Bank. (Def. PNC's Reply, Ex. 3, Cert. of Merger.) Thereafter, the business operated as National City Mortgage, a division of National City Bank.

Effective November 6, 2009, and pursuant to approval granted by the United States Office of the Comptroller of the Currency, National City Bank merged with and into Defendant PNC Bank, N.A., with the surviving entity being PNC Bank. (*Id.*, Ex. 4, 12/2/09 Cert.) After the merger, the National City Mortgage division changed its name to PNC Mortgage and continued operating as a division of PNC Bank.

On or about September 27, 2010, PNC Mortgage, a division of Defendant PNC Bank, as successor by merger to National City Mortgage Co., assigned the Mortgage and Note to Defendant U.S. Bank as Trustee for the Special Underwriting and Residential Finance Trust Mortgage Loan Asset-Backed Certificates Series 2006-BCI.[1] That Assignment was recorded on October 19, 2010. (1st Am. Compl., Ex. 5.)

### C. Mortgagor Jerry Malloy's Death

The mortgagor-debtor, Jerry Malloy, died on October 3, 2009. Plaintiffs allege that a copy of Malloy's death certificate was filed with the Washtenaw County Clerk/Register on October 13, 2009. (1st Am. Compl., Ex. 10.) That death certificate, however, does not provide a Liber or Page number confirming that it was recorded in the Washtenaw County Register of Deeds.[2] (*Id.*) Plaintiffs allege that Lucia Malloy-Rangel became sole owner of

---

[1] U.S. Bank is the Trustee of a mortgage pass-through trust ("U.S. Bank Trust"). The U.S. Bank Trust was governed by a Pooling and Servicing Agreement, which, among other things, served to control allocation of loan proceeds and losses to bondholders, described how subject loans were to be serviced, and, according to Plaintiffs, established a "closing date" deadline for the assignment of assets to the Trust.

[2] It is undisputed that Guadalupe Malloy died before Jerry Malloy, as reflected in the recorded Mortgage and Note.

the Ann Arbor property by right of survivorship. (1st Am. Compl. ¶ 11.)

On April 29, 2010, Plaintiff Malloy-Rangel was appointed Personal Representative of her father's estate. (*Id.* at ¶ 12; 1st Am. Compl., Ex. 11, Letters of Authority.) On April 25, 2011, the Estate of Jerry L. Malloy was closed. (1st Am. Compl. at ¶ 26 and Ex. 14, Probate Closing Statement.)

### D. Foreclosure Proceedings

After default on the mortgage loan, foreclosure proceedings began. (*Id.* at ¶ 21.)

On August 6, 2010, counsel for BAC Home Loans Servicing, L.P ("BAC"), Trott & Trott, sent a notice addressed to Jerry Malloy at 811 Barton Drive, Ann Arbor, Michigan, by first class, certified mail, restricted delivery with return receipt requested. The notice informed the "Borrower/Mortgagor" that the mortgage loan on the Ann Arbor property was in default, that $179,315.39 was due and owing, and advised mortgagor what he needed to do to avoid foreclosure. (Doc. #25, Def. U.S. Bank's Mot. to Dismiss, Ex. G.)

On August 12, 2010, BAC's counsel, Trott & Trott, published notice pursuant to Mich. Comp. Laws § 700. 3205a(4), to "JERRY MALLOY, the borrowers and/or mortgagors (hereinafter 'Borrower') regarding the property located at: 811 Barton Dr., Ann Arbor, MI 48105-1229" in the Washtenaw Legal News. That published notice provided Borrower with the same information contained in the August 6, 2010 letter regarding how to avoid foreclosure. (Doc. # 25, Def. U.S. Bank's Mot., Ex. J.)

On August 17, 2010, BAC's counsel sent a letter to Jerry Malloy at the Ann Arbor property address, confirming that either Jerry Malloy, "a co-mortgagor, or an approved housing counselor" had requested a meeting to discuss loan modification and/or loss mitigation options regarding the Ann Arbor property, confirming that "the foreclosure

4

process will not continue until on or after November 4, 2010," and requested specific documents. (1st Am. Compl., Ex. 13.)

On September 16, 2010, BAC's counsel sent another letter addressed to Jerry Malloy at the Ann Arbor property address. It informed the "Borrower(s)" that counsel had not yet received the requested documents and if documentation was not submitted "we may proceed with foreclosure on or after November 4, 2010." (Doc. # 25, Def. U.S. Bank's Mot. to Dismiss, Ex. I.)

On May 19, 2011, counsel for the mortgage loan servicer published a Notice of Mortgage Foreclosure Sale of the Ann Arbor property. (Doc. # 25, Def. U.S. Bank's Mot. to Dismiss, Ex. K; 1st Am. Compl., Ex. 1.)

On or before July 1, 2011, BAC sent a written notice to Jerry Malloy at the Ann Arbor property address advising him that, effective July 1, 2011, the servicing of his mortgage loan was being transferred from BAC Home Loans Servicing, L.P. to Bank of America, N.A. (1st Am. Compl., Ex. 2.)

To date, the foreclosure sale has not occurred; rather, the sale is being adjourned week to week. (Def. PNC's Resp. at 3, n.1.)

**E. Plaintiffs' Lawsuit**

On July 6, 2011, Defendant Trott & Trott timely removed Plaintiffs' lawsuit from the Washtenaw County Circuit Court because Plaintiffs had alleged a federal claim against that Defendant [1]. Plaintiffs subsequently filed an amended complaint, dismissing the sole federal claim [13]. This Court subsequently denied Plaintiffs' motion to remand, concluding that Defendant Trott & Trott had been fraudulently joined [20] and granted Trott & Trott's motion to dismiss [39].

On January 23, 2012, the Court granted U.S. Bank's motion to dismiss [47]. In its Opinion and Order [47], the Court ruled that:

1. Plaintiffs, who are not parties to the challenged assignments, lack standing to bring claims that question their validity [Doc. #47, Opin. at 9];

2. Even if Plaintiffs did have standing to challenge U.S. Bank's assignment, Plaintiffs, who are neither parties to nor intended third-party beneficiaries of the U.S. Bank Trust's Pooling and Servicing Agreement, lack standing to challenge U.S. Bank's compliance with that Agreement [*Id.* at 9-10];

3. When PNC became successor by merger to National City, PNC obtained the Mortgage and Note by operation of law and thus there was no need for an assignment [*Id.* at 10-11];

4. There is no defect in the record chain of title that would preclude U.S. Bank from pursuing foreclosure by advertisement under Michigan law [*Id.* at 11];

5. The Mortgage and Note at issue were not improperly "split" or separately assigned; U.S. Bank is both the mortgagee and the noteholder [*Id.* at 11-14];

6. Michigan's foreclosure by advertisement statute expressly provides that a servicing agent of the mortgage, like BAC Home Loans Servicing, LP ("BAC"), possesses the statutory authority to foreclose [*Id.* at 13-14, 14 n.6];

7. BAC's initiation of foreclosure proceedings did not and will not subject Plaintiffs to a double foreclosure [*Id.*];

8. Plaintiffs cannot state a cognizable U.C.C. claim or breach of contract claim based on any U.C.C. violation [*Id.* at 14, n.6];

9. Plaintiffs failed to state a breach of contract claim [*Id.* at 15];

10. Plaintiffs failed to state a quiet title claim [*Id.* at 15-16]; and

11. Plaintiffs failed to state a cause of action for claim and delivery [*Id.* at 16].

## II. Standard of Review

### A. Rule 56 - Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

### B. Rule 12(c) - Judgment on the Pleadings

Motions seeking judgment on the pleadings, brought pursuant to Federal Rule of Civil Procedure 12(c), are reviewed under the same standard applied to motions to dismiss brought pursuant to Rule 12(b)(6). *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft*

8

*v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

Moreover, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). "A court may also consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Id.* at 336. In addition, documents not attached to

the pleadings may still be considered part of the pleadings when the "document is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (internal quotation marks and citations omitted).

### III.   Analysis

This matter is now before the Court on Plaintiffs' motion for summary judgment and Defendant PNC Bank's motion for judgment on the pleadings.  Plaintiffs argue that they are entitled to cancellation of all foreclosure proceedings because there was no recorded assignment of the Malloy Mortgage and Note from National City Mortgage Co., a subsidiary of National City Bank to PNC Mortgage, a division of Defendant PNC Bank, N.A., and thus any assignment from PNC to U.S. Bank is invalid.  Defendant PNC Bank argues that it is entitled to judgment on the pleadings because (1) as non-parties, Plaintiffs lack standing to challenge the validity of an assignment; (2) even if they had standing, in *Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 339 F. App'x 97, 103 (6th Cir. 2010), Plaintiffs' argument here, that a Michigan mortgage may only be foreclosed by advertisement if every interim assignment between the original lender and the foreclosing party is revealed by the public record, was rejected; and (3) even if Plaintiffs' had standing, their argument lacks merit because there was no need for an assignment from National City Mortgage Co. to PNC Mortgage.  This Court agrees with Defendant PNC Bank.

The first two arguments raised by Plaintiffs have previously been addressed and rejected in this Court's Opinion and Order Granting Defendant U.S. Bank's motion to dismiss [Doc. #47, Opin. at 8-14].  Plaintiffs' third argument was also addressed, *see id.* at 10-11, but is addressed more fully in Defendant PNC Bank's Reply.  This Court finds

10

Defendant PNC Bank's arguments persuasive.

As stated above, effective October 1, 2008, as part of a corporate consolidation, National City Mortgage Co. merged into National City Bank. National City Mortgage Co. was an Ohio corporation. Under Ohio law, the surviving entity of a corporate merger immediately possesses "all assets and property of every description, and every interest in the assets or property, wherever located," of the constituent entity without the necessity of further act or deed. *See* Ohio Rev. Code Ann. § 1701.82(A)(3). That law expressly provides that "[t]itle to any real estate or any interest in the real estate vested in any constituent entity shall not revert or in any way be impaired by reason of such merger or consolidation." *Id.*

Subsequently, in November 2009, National City Bank merged with and into Defendant PNC Bank, N.A. with PNC Bank as the surviving entity. Federal law requires that, when there is a merger between two national banking associations, the old national bank's identity is continued in the new national bank into which it merged and that the two are thereafter consider one and the same entity. *See* 12 U.S.C. § 215a(e) ("The corporate existence of each of the merging banks or banking associations participating in such merger shall be merged into and continued in the receiving association and such receiving association shall be deemed to be the same corporation as each bank or banking association participating in the merger. All rights . . . of the individual merging banks or banking associations in and to every type of property (real, personal, and mixed) and choses in action shall be transferred to and vested in the receiving association by virtue of such merger without any deed or other transfer."). Thus, there was no need for any

11

assignment to PNC Bank, and PNC Bank's authority to assign the Malloy Mortgage was derived from its merger with National City Bank which in turn derived its authority to assign the Malloy Mortgage from its merger with National City Mortgage Co.

As this Court observed in its earlier Opinion, Plaintiffs' reliance on *Kim v. JP Morgan Chase Bank*, ___ N.W.2d ___, 2012 WL 104463 (Mich. Ct. App. Jan. 12, 2012), for a contrary result is misplaced. [Doc. #47, Opin. at 9]. In *Kim*, the plaintiffs had borrowed money from Washington Mutual Bank, the original mortgagee. The FDIC was subsequently appointed receiver over the assets of Washington Mutual Bank. The FDIC then assigned the plaintiffs' mortgage to JP Morgan Chase Bank. JP Morgan Chase Bank then attempted to foreclose without first recording that assignment. The Michigan Court of Appeals reasoned that, because the defendant bank was the party seeking to foreclose by advertisement and had acquired its interest in the mortgage by assignment, Michigan's statute required that defendant bank record its mortgage interest, i.e., the assigned of mortgage, before the date of the sheriff's sale. Here, there has been no sheriff's sale; and if one does occur, U.S. Bank has already recorded PNC's assignment of the Malloy Mortgage to it. Thus, the holding in *Kim* does nothing to advance Plaintiffs' claims.

## IV. Conclusion

For the above-stated reasons, Plaintiffs' motion for summary judgment [44] is DENIED, Defendant PNC Bank's motion for judgment on the pleadings [56] is GRANTED, and this case is DISMISSED.

SO ORDERED.

       s/Nancy G. Edmunds
       Nancy G. Edmunds
       United States District Judge

Dated: April 2, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 2, 2012, by electronic and/or ordinary mail.

       s/Carol A. Hemeyer
       Case Manager